# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JAVIER PEREZ,

        Plaintiff,

v.                                   Case No. 6:15-cv-879-Orl-37GJK

BOBBY CRAIG HARRELSON, JR.;
CONSTANTINE PROCOS; and
JOSHUA SANTOS,

        Defendants.

_____

## ORDER

This cause is before the Court on:

1.  Defendants', Constantine Procos and Joshua Santos, Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 36), filed August 13, 2015.

2.  Response to Defendant[s] Constantive [sic] Procos and Santos [sic] Motion to Dismiss Plaintiffs [sic] Complaint (Doc. 40), filed September 16, 2015.[1]

Upon consideration, the Court finds that the motion is due to be granted in part and denied in part.

---

[1] As an initial matter, Plaintiff's response was grossly untimely. Plaintiff's response was due on August 31, 2015. *See* Local Rule 3.01(b) (allocating fourteen days to respond); Fed. R. Civ. P. 6(d) (allocating an additional three days to respond). Without any justification, Plaintiff responded more than two weeks after the applicable deadline. (Doc. 40 ("**Response**").) Consequently, the Court did not consider the Response in ruling on the Motion. Going forward, counsel is warned that failure to abide by the deadlines set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's Case Management and Scheduling Orders may result in the striking of late filings or the consideration of motions with late responses as unopposed.

## BACKGROUND[2]

On January 22, 2012, in DeLand, Florida, Plaintiff Javier Perez ("**Plaintiff**") and his friends, Leobigildo Espinoza and Arnulfo Mendoza, (collectively, "**the Men**") used a BB gun ("**BB Gun**") to shoot at an orange in Plaintiff's backyard. (Doc. 30, ¶ 7.) A neighbor saw the Men shooting the orange and called 911 ("**911 Call**"). (*Id.*) The neighbor falsely reported to 911 that the Men had aimed a rifle at her and her property. (*Id.* ¶ 9.) Three DeLand Police Department officers—Bobby Craig Harrelson, Jr. ("**Officer Harrelson**"), Constantine Procos ("**Officer Procos**"), and Joshua Santos ("**Officer Santos**") (collectively, "**the Officers**")—reported to the scene. (*Id.*)

After the 911 Call, but before the Officers arrived, the Men ceased shooting the orange and placed the BB Gun on top of an unplugged stove located outside Plaintiff's house. (*Id.* ¶ 8.) They did not touch the BB gun again. (*Id.*) The Men remained in Plaintiff's backyard, sitting around and talking. (*Id.* ¶ 9.)

The Officers subsequently arrived on the scene. (*Id.*) The Officers did not announce themselves, but instead, formed a perimeter behind the fence around Plaintiff's backyard, without his knowledge. (*Id.*, *see also id.* ¶ 12.) The Officers observed the BB Gun on the stove. (*Id.* ¶ 10.) At this time, Plaintiff and Espinoza were sitting behind the stove and had no access to the BB Gun. (*Id.*) Mendoza stood twenty feet away from the stove, watering a garden. (*Id.*)

Officer Harrelson began shooting at the Men, "fir[ing] numerous rounds" and injuring them ("**the Shooting**"). (*Id.* ¶ 11.) Plaintiff sustained injuries to his right bicep,

[2] The following facts are taken from Plaintiff's Amended Complaint (Doc. 30), taken as true, and construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

right shoulder, and face. (*Id.*) Officer Harrelson also caused property damage to Plaintiff's house and to personal property in his backyard. (*Id.*) A bullet was also gouged through the BB Gun. (*Id.*)

Officers Santos and Procos ("**Standby Officers**") stood by and watched the Shooting take place and failed to take any action to intervene. (*Id.* ¶ 12.) The Standby Officers never saw Plaintiff lift, aim, or shoot the BB Gun, which remained on the stove during the Shooting (*id.* ¶¶ 11, 12).

The Officers subsequently lied under oath, falsified police records, and signed sworn documents regarding the Shooting, which led to Plaintiff's arrest, incarceration, and prosecution for aggravated assault of a law enforcement officer. (*Id.* ¶ 13.) Plaintiff spent three years and three months in the Volusia County Jail awaiting a jury trial. In the interim, Plaintiff incurred legal fees among other damages. (*Id.*) Ultimately, a jury found Plaintiff not guilty of aggravated assault of a law enforcement officer. (*Id.*)

Based on the foregoing, Plaintiff filed a civil rights action against the Officers pursuant to 42 U.S.C. § 1983. (*See* Doc. 1.) In his Amended Complaint (hereinafter, "**Complaint**"), Plaintiff asserts separate § 1983 claims for excessive force, false arrest/false imprisonment, and malicious prosecution against each Officer in their individual capacities. (Doc. 30.) The Standby Officers move to dismiss Counts IV through IX of the Complaint on grounds of qualified immunity and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 36.) The Court now takes the matter under consideration.

**STANDARDS**

## I.    Pleading Standards

Rule 8(a)(2) provides that a claimant must plead "a short and plain statement of the claim." On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

## II.    42 U.S.C. § 1983 and Qualified Immunity

Section 1983 provides aggrieved persons with a procedural mechanism to seek redress for constitutional violations that are committed while a defendant is acting under color of state law. 42 U.S.C. § 1983. Acts performed by law enforcement officers—even if illegal or unauthorized—are considered to have been performed under color of state law so long as the acts are done in the defendant's capacity as a law enforcement officer. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988). To avoid an individual liability claim under § 1983, law enforcement officers may invoke the defense of qualified immunity, which protects "all but the plainly incompetent or one who is knowingly violating federal law." *See Depalis-Lachaud v. Noel*, 505 F. App'x 864, 867 (11th Cir. 2013). Courts should resolve qualified immunity issues at the pleading stage, if possible. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

"[T]o receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*; *see also Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). To do so, the plaintiff must make the following two-part showing: (1) that the facts of the case make out a violation of a constitutional right; and (2) that the constitutional right was "clearly established" at the time of the putative misconduct.[3] *See Pearson*, 555 U.S. at 232. "This inquiry is undertaken in light of the specific context of the case, not as a broad general proposition." *Terrell*, 668 F.3d at 1250 (citation omitted). "When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). This construction "eliminates all issues of fact" such that "the court has the plaintiff's best case before it." *Id.*

## DISCUSSION

Counts IV through IX of the Complaint assert identical claims against the Standby Officers for: (1) excessive force based on a failure-to-intervene theory (Counts IV and VII); (2) false arrest/false imprisonment (Counts VI and IX); (3) and malicious prosecution (Counts V and VIII).[4] (Doc. 30, ¶¶ 46–110.) The Standby Officers contend that they are

---

[3] The Court may address the prongs of the qualified immunity inquiry in any order. *Pearson*, 555 U.S. at 236. However, the United States Supreme Court encourages courts to address the constitutional violation prong first so as to develop a body of clearly established law on the often fact-specific inquiries that arise in the context of § 1983 claims. *See id.*

[4] The Complaint incorrectly labels two counts as "Count VII." The Court's citation to the counts in this Order reflects the correct numbering.

entitled to qualified immunity on the foregoing counts because Plaintiff failed to sufficiently allege constitutional violations. (Doc. 36, p. 4.) Specifically, the Standby Officers argue that: (1) Plaintiff fails to allege that they *personally* engaged in conduct that directly violated Plaintiff's clearly established constitutional rights; and (2) Plaintiff fails to state a claim for excessive force, false arrest/false imprisonment, or malicious prosecution (*id.* at 5–11.) The Court will discuss the viability of each claim in turn.

## I.      Excessive Force Claims (Counts IV and VII)

The Standby Officers move for dismissal of Plaintiff's excessive force claims on the grounds that: (1) neither Standby Officer "participat[ed] in any use of unlawful excessive force" ("**No Participation Argument**"); (2) "the alleged use of deadly force by [Officer] Harrelson was not objectively unreasonable under the circumstances" ("**No Excessive Force Argument**"); and (3) even if Officer Harrelson had employed excessive force, the Standby Officers did not "witness[] any excessive force firsthand" or have ample time or justification to intervene ("**No Opportunity to Intervene Argument**"). (Doc. 36, pp. 4–6.)

### A.      No Participation Argument

The Standby Officers' No Participation Argument is not well taken. The crux of Plaintiff's excessive force claims against the Standby Officers is that the Standby Officers failed to intervene in the Shooting, not that they personally used any unlawful force against Plaintiff. (*See* Doc. 30, ¶¶ 51, 84.) An officer need not personally use force to be liable for an excessive force claim. *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924–25 (11th Cir. 2000) (recognizing that an officer may be liable for failing to intervene when another officer uses excessive force). The Court, therefore, rejects the

Standby Officers' No Participation Argument.

### B.     No Excessive Force Argument

Next, the Standby Officers maintain that Officer Harrelson was not using excessive force. (*See* Doc. 36, p. 7.) Ergo, they argue—correctly—that if Officer Harrelson was not using excessive force, then the claims against them must fail. (*Id.*); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) (recognizing that a claim for failure to intervene must be based on a sufficiently pled claim for excessive force). For purposes of a Rule 12(b)(6) attack, however, the Complaint sufficiently alleges that Officer Harrelson violated Plaintiff's clearly established constitutional right to be secure in his person and free from the use of unreasonable and excessive force.

It is undisputed that Officer Harrelson was acting within his discretionary authority at all relevant times; thus, the Court must afford him qualified immunity unless the factual allegations in the Complaint—viewed in the light most favorable to Plaintiff—support reasonable inferences that: (1) Officer Harrelson's conduct during the Shooting violated the Fourth Amendment; and (2) the illegality of such conduct "was clearly established" on the date of the Shooting—**January 22, 2012**. *See Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007) (noting that a defendant is entitled to qualified immunity unless "the plaintiff's allegations state a claim of violation of clearly established law"). The Court finds that they do.

As pled, Officer Harrelson's conduct during the Shooting violated the Fourth Amendment because it was an unconstitutional application of deadly force. The Eleventh Circuit has clearly proscribed that a police officer may use deadly force only where the police officer:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if feasible.

*McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (quoting *Vaughan v. Cox*, 343 F.3d 1323, 1329–30 (11th Cir. 2003)). Such factors frame the Court's analysis under an objective reasonableness standard. *Id.* at 1205.

The Standby Officer's contend that Officer Harrelson had arguable probable cause to believe that the Men posed an imminent threat of danger to the Officers or others (Doc. 36, p. 6), but they fail to establish the remaining factors necessary to justify Officer Harrelson's use of deadly force. Indeed, the facts alleged in the Complaint demonstrate that the Men were neither attempting to escape nor given any warning that the Officers had arrived and were posed to use deadly force. Therefore, the Complaint alleges facts which, if true, would permit a jury to determine that Officer's Harrelson's use of deadly force was objectively unreasonable under the circumstances.

Additionally, Plaintiff's right to be free from the use of such excessive force was clearly established on January 22, 2012. If the "state of the law" provided the defendant officer with "fair warning that [his] alleged treatment [of the plaintiff] was unconstitutional," then the right is "clearly established" for purposes of a qualified immunity analysis. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Since the early 1980s, the law has been clear that "shooting a suspected felon who was apparently neither fleeing nor threating the officers or others [is] . . . an unreasonable seizure and clearly violate[s] Fourth Amendment law." *Lundgren v.*

*McDaniel*, 814 F.2d 600, 603 (11th Cir. 1987). Thus, Officer Harrelson had fair warning that it was a Fourth Amendment violation to shoot numerous rounds at Plaintiff, who was neither fleeing nor threating others (*see* Doc. 30, ¶¶ 8, 11).

The circumstances alleged in the case at bar are analogous to those presented in *St. George v. Pinellas County*. 285 F.3d 1334 (11th Cir. 2002). In finding that the *St. George* officers were not entitled to qualified immunity at the motion to dismiss stage, the court considered, *inter alia*, the following alleged facts: (1) the officer fired shots through the decedent's kitchen window without informing himself of what the decedent was doing; (2) the decedent—who was holding a holstered gun at his side while opening the refrigerator door—was neither threatening the officer, nor in a position of flight; and (3) the decedent was not facing the officer when he was shot. *Id.* at 1338. Here, Plaintiff alleges that the Men were sitting in the backyard of Plaintiff's residence, which was enclosed by fence (*see* Doc. 30, ¶¶ 7, 10); thus, they were not in a position of flight. Officer Harrelson fired shots from behind the fence without inquiring as to what the Men were doing or warning them of his presence. (*See id.* ¶¶ 10, 11.) Lastly, the Men were not threatening the Officers as the BB Gun, sitting on a nearby appliance, was out of their reach. (*See id.* ¶¶ 8, 10.) These circumstances render the instant action sufficiently analogous to *St. George*; as such, Officer Harrelson had fair warning that the Shooting was unlawful. The Court, therefore, finds that Officer Harrelson is not entitled to qualified immunity at this stage of the proceedings. Consequently, the Standby Officers' No Excessive Force Argument fails.

### C.    No Opportunity to Intervene Argument

Finally, the Standby Officers contend that Plaintiff fails to state a claim for failure

to intervene. (Doc. 36, pp. 6–8.) The Court agrees.

Though an officer may be liable for failing to intervene when another officer uses excessive force, liability "only arises when the officer is in a position to intervene and fails to do so." *Priester*, 208 F.3d at 924–25. An officer may be in a position to intervene when an unconstitutional use of force occurs in the officer's presence and is prolonged or anticipated by the officer. *See id.* (holding bystander officer liable based on evidence that he was at the scene with a flashlight and was in "voice contact" with the co-defendant officer during a two minute K-9 officer attack); *see also Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir.1998) (finding no liability absent evidence that the defendant "had an opportunity to observe or halt" the excessive force).

The Standby Officers argue that Plaintiff's factual allegations fail to demonstrate that they were in a position to see any force used by Officer Harrelson or that they had ample time, ability, or justification to intervene. (Doc. 36, p. 7.) Plaintiff alleges that: (1) upon their arrival at his residence, the Officers formed a perimeter around Plaintiff's backyard without Plaintiff's knowledge and without announcing themselves; (2) the Officers observed the BB Gun sitting on the stove; (3) the BB Gun never left the top of the stove; (3) during this time, the Men never touched the BB Gun, which was beyond their reach; (4) Officer Harrelson began firing numerous rounds at the Men, causing them injury; and (5) the Standby Officers watched the Shooting take place and failed to take any action to stop Harrelson from firing the shots. (Doc. 30, ¶¶ 9, 10, 12.)

Here, Plaintiff sufficiently alleges that the Shooting took place in the Standby Officers' presence and that they "had an opportunity to observe . . . excessive force directed at [Plaintiff]." *See Ensley*, 142 F.3d at 1407–08. Plaintiff, however, fails to allege

that the Standby Officers were in a positon to intervene. Notably, the Complaint is devoid of any allegations as to: (1) the duration of the Shooting; or (2) the relative location of the Standby Officers to that of Officer Harrelson. The absence of such allegations warrants dismissal of Counts IV and VII. *See Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (finding that the plaintiff's failure to allege facts indicating the duration of the alleged constitutional violation or that the defendants were positioned in a manner that would have allowed them to intervene was fatal to the plaintiff's claim for failure to intervene). Because Plaintiff could conceivably allege facts to cure these deficiencies, the Court will provide him an opportunity to replead, pursuant to the limitations set forth in Rule 11. *See Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985) ("A district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted.")

## II.    False Arrest/False Incarceration Claims (Counts VI and IX)

A warrantless arrest without probable cause violates the Constitution and provides a basis for a § 1983 false arrest claim. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). A detention on the basis of a false arrest presents a viable § 1983 false imprisonment claim. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a §1983 action for false arrest.[5] *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th

---

[5] Similarly, because "a claim of false imprisonment, absent misidentification, depends on an absence of probable cause," Plaintiff's claim for false imprisonment wil also fail if the Officers had probable cause to arrest him. *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009).

Cir. 2004). A police officer may also be held liable under § 1983 for submitting an application for an arrest warrant that contains false information. *Holmes v. Kucynda*, 321 F.2d 1069, 1083 (11th Cir. 2003).

The Standby Officers move for dismissal of Plaintiff's claims for false arrest and false imprisonment because: (1) Plaintiff was arrested pursuant to a judicially-issued warrant ("**Warrant**"), which they argue constitutes a conclusive showing of probable cause; (2) neither Standby Officer participated in procuring the Warrant or effectuating Plaintiff's arrest; and (3) several factual allegations within the Complaint demonstrate probable cause for the arrest. (Doc. 36, pp. 8–10.)  The Court is unpersuaded.

### A. Warrant

The Standby Officers first assert that they had conclusive probable cause because Plaintiff was arrested pursuant to a Warrant, which they submit to the Court as part of Plaintiff's public criminal records ("**Submission**").[6] (Doc. 36, pp. 9, 13–14.)

The Submission does not constitute a conclusive finding of probable cause because, according to Plaintiff, the Officers knowingly submitted false information to obtain the Warrant. (Doc. 1, ¶ 13.) At this stage of the litigation, these allegations must be taken as true. *See Hill*, 321 F.3d at 1335. Consequently, the Standby Officers' reliance on the Warrant is insufficient to escape liability. *See Holmes*, 321 F.2d at 1083; *Crisante v. Coats*, No. 8:11-cv-2007-T-17TBM, 2012 WL 1565424, at *8 (M.D. Fla. May 2, 2012).

---

[6] Although the Court is ordinarily limited to the four corners of the complaint in considering a motion to dismiss, "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Halmos v. Bomardier Aerospace Corp.*, 404 Fed. App'x 376, 377 (11th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (11th Cir. 1999)).

**B. Participation in Arrest**

The Standby Officers also assert that the Complaint lacks any factual allegations to demonstrate that they participated in either procuring the Warrant or effectuating Plaintiff's physical arrest. (Doc. 36, pp. 9–10.) Not so. Plaintiff alleges that all three Officers "falsified arrest and police reports," "lied under oath," and otherwise fabricated police records, which led to Plaintiff's arrest. (Doc. 30, ¶ 30.) Additionally, Plaintiff alleges that the Standby Officers assisted in handcuffing and arresting Plaintiff.[7] (*Id.*, ¶¶ 51, 84.) These allegations are sufficient to demonstrate that the Standby Officers participated in procuring the Warrant and procuring Plaintiff's physical arrest.

**C. Allegations Within the Complaint**

Finally, the Standby Officers contend that the following allegations establish that probable cause existed for Plaintiff's arrest: (1) the neighbor called and notified law enforcement that the Men were aiming a rifle at her and her property; (2) the BB Gun was in plain sight; (3) Plaintiff was "surrounding" the BB Gun; and (4) the Men had been shooting the BB gun at Plaintiff's residence earlier that day. (Doc. 36, p. 10.) This argument also fails.

Probable cause exists if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *Holmes*, 321 F.2d at 1079.

---

[7] To be sure, these allegations were included in Counts IV and VII—Plaintiff's claims for excessive force. Such allegations would have more appropriately been included in Counts VI and IX—Plaintiff's claims for false arrest/false imprisonment. However, as Counts IV and VII were also directed at the Standby Officers, they were adequately put on notice of Plaintiff's allegations as to their involvement in his arrest.

Additionally, arguable probable cause—which is all that is required to entitle an officer to qualified immunity—exists "where reasonable officers in the same circumstances and possessing the same knowledge as the [Officers] could have believed that probable cause existed to arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Therefore, "if arguable probable cause is evident on the face of a complaint, then pre-discovery dismissal is appropriate based on qualified immunity." *Bloom v. Alvereze*, 498 F. App'x 867, 880 (11th Cir. 2012).

Here, Plaintiff was arrested for aggravated assault of a law enforcement officer. (Doc. 1, ¶ 13.) Therefore, the Standby Officers must point to allegations in the Complaint that establish probable cause, or arguable probable cause, for this particular crime.

Aggravated assault of a law enforcement officer consists of the following elements: (1) an intentional unlawful threat by word or act to do violence to a law enforcement officer; (2) the apparent ability to carry it out; (3) the creation of a well-founded fear that the violence is imminent; and (4) specific intent to do violence to a law enforcement officer. *Swift v. State*, 973 So.2d 1196, 1199 (Fla. 2d DCA 2008). The allegations in the Complaint do not demonstrate any of the requisite elements for this crime. Indeed, Plaintiff alleges that the Men were unaware of the Officers' presence until the Shooting began and never touched—nor were within reach of—the BB Gun after the Officers arrived. (Doc. 30, ¶¶ 9, 10.) Accepting these allegations as true, it is readily apparent that no prudent or reasonable officer could have believed that probable cause existed to arrest Plaintiff for aggravated assault of a law officer under these circumstances.

In light of the foregoing, the Motion is due to be denied as to Counts VI and IX.

### III.   Malicious Prosecution (Counts VI and VIII)

The Standby Officers also contend that Plaintiff fails to state claims for malicious prosecution. (Doc. 36, pp. 10–12.) "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). In Florida, the common law tort of malicious prosecution requires Plaintiff to demonstrate that: (1) a proceeding commenced against the plaintiff; (2) the defendant was the legal cause of the proceeding; (3) the proceeding terminated in the plaintiff's favor; (4) there was no probable cause for the proceeding; (5) the defendant acted with malice; and (6) the plaintiff suffered damages as a result of the proceeding. *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946 (11th Cir. 2008). Here, only the second and fifth factors of common law malicious prosecution are at issue.

The Standby Officers first argue that Plaintiff does not allege sufficient facts to show that they were the legal cause of the proceeding against Plaintiff. (*Id.* at 11.) The Court disagrees. Plaintiff alleges that the Officers "lied under oath," "falsified police records," and "signed sworn documents including arrest and or police reports which caused the Plaintiff to be arrested, incarcerated for almost three years, and prosecuted by the State of Florida." (Doc. 30, ¶ 13.) Such allegations are sufficient to demonstrate that the Standby Officers were the legal cause of the proceeding against Plaintiff.

The Court also rejects the Standby Officers' contention that Plaintiff fails to sufficiently allege that they acted with malice. (Doc. 36, p. 11.) In addition to averring malice generally (Doc. 30, ¶¶ 61, 93), Plaintiff alleges that the Standby Officers knew that

the police reports and statements indicating that Plaintiff had committed a crime were false but failed to come forward with this information. (*Id.* ¶¶ 63, 95.) Because malice may be alleged generally, Fed. R. Civ. P. 9(b), the Court finds that the Complaint more than sufficiently alleges malice on the part of the Standby Officers. Thus, the Motion is due to be denied as to Plaintiff's malicious prosecution claims.

As a final matter, the Court finds that, at this stage of the litigation, the Standby Officers are not entitled to qualified immunity on Plaintiff's false arrest, false imprisonment, and malicious prosecution claims. In *Kingsland*, which was decided in 2004, the Eleventh Circuit held that "falsifying facts to establish probable cause is patently unconstitutional" and was so long before the *Kingsland* plaintiff's arrest in 1995. *Kingsland*, 382 F.3d at 1232. By extension, the illegality of such conduct was also clearly established on January 22, 2012. However, the Standby Officers are not precluded from reasserting this defense at the close of discovery, if warranted.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants', Constantine Procos and Joshua Santos, Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 36) is **GRANTED IN PART AND DENIED IN PART**.

   a. Counts IV and VII are **DISMISSED WITHOUT PREJUDICE**.

   b. In all other respects, the Motion is **DENIED**.

2. On or before Monday, **March 21, 2016**, Plaintiff may file a Second Amended Complaint consistent with the strictures in this Order. Failure to timely file **will** result in dismissal of Counts IV and VII with prejudice.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 7, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record